## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS A. RAMÍREZ-LORENZO,** | |
| Petitioner, | |
| | |
| v. | |
| | CRIM. NO.  17-1752 (JAG-MDM) |
| **HON. ERIC Y. ROLON, ET AL.,** | |
| Respondents.[1] | |

## **REPORT AND RECOMMENDATION**

After a five-day bench trial, held on select dates between October 23, 2013, and November 1, 2013, before Puerto Rico Superior Court Judge Hiram Cerezo de Jesús, the petitioner, Luis A. Ramirez-Lorenzo (the "Petitioner"), was found guilty of sexual assault against a minor, pursuant to Article 142 of the Puerto Rico Criminal Code of 2004, codified at Title 33, L.P.R.A. § 4770,[2] for having digitally penetrated his then six-year-old biological daughter, identified herein by her initials A.L.R.M. (Respondent's Statement of Uncontested Material Facts, hereinafter to be referred to as "SUMF" at ¶¶ 2, 3, 4, & 6). Petitioner was later sentenced by Judge Cerezo de Jesús, on January 23, 2014, to twenty (20) years in prison. SUMF at ¶ 5. During the trial, the Petitioner was represented by attorneys Leonardo Muñiz Gómez ("Muñiz Gómez") and Rolando Matos Acevedo ("Matos Acevedo"). Attorney Matos Acevedo also represented the Petitioner in a custody matter related to A.L.R.M. (SUMF at ¶¶ 7-10).

---

[1] The Respondents include the Puerto Rico Secretary of Corrections and Rehabilitation and the Puerto Rico Attorney General, in their official capacities. At the moment, the current Secretary of Corrections is Ana I. Escobar-Pabón, and the current Attorney General is Domingo Emanuelli Hernández. To avoid confusion in the record, the Court will leave the caption unchanged.

[2] Title 33, L.P.R.A. § 4770, makes it a crime to sexually penetrate any individual who has not attained the age of 16 years.

On October 4, 2019, after exhausting all his state post judgment relief,[3] the Petitioner filed an Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2254 (the "Amended Motion to Vacate Sentence"). Docket No. 31. In his Amended Motion to Vacate Sentence, the Petitioner raised claims of ineffective assistance of counsel. *Id.*

On May 31, 2022, the Respondents filed a "Motion for Summary Judgment"[4] claiming that there is no dispute over the material facts in this case and that Respondents are entitled to judgment as a matter of law. Docket No. 110. On July 12, 2022, the Petitioner opposed the Motion for Summary Judgment (the "Opposition") (Docket No. 122), and on August 4, 2022, the Respondents replied to the Petitioner's Opposition (the "Reply") (Docket 128). For the reasons espoused more thoroughly below, the Court **RECOMMENDS** that Respondents' Motion for Summary Judgment (Docket No. 110) be **GRANTED** and that Petitioner's Amended Motion to Vacate Sentence (Docket No. 31) be **DISMISSED**.

### I.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if 'it may reasonably be resolved in favor of either party at trial" and "material" if it potentially affects the outcome of the case. *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).

The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. *Celotex,* 477 U.S. at 323; *Maldonado–Denis v.*

---

[3] *See* Docket Nos. 59 & 77.

[4] The complete title of the motion is "Motion for Summary Judgment and Memorandum in Support Thereof." Docket No. 110.

*Castillo-Rodríguez,* 23 F.3d 576, 581 (1st Cir. 1994). Thus, the moving party bears the initial burden of showing a lack of evidence to support the non-moving party's case. *Celotex,* at 325. It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which demonstrate the lack of controverted facts and support adjudication in its favor as a matter of law. *Id.* at 323 (citing Fed.R.Civ.P. 56(c)).

Only when a properly supported motion has been presented does the burden shift to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor." *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). To defeat summary judgment, the non-moving party may either "set forth specific facts showing that there is a genuine issue for trial," or demonstrate that considering the uncontroverted facts it is entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(e). As such, if the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. *Suarez v. Pueblo Int'l,* 229 F.3d 49, 53 (1st Cir. 2000). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. *See Anderson,* 477 U.S. at 255. In addition, the Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir. 1987)). *See also*

*Cortés–Irizarry v. Corporación Insular,* 111 F.3d at 187; and *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1ˢᵗ Cir. 1994).

## II.    Petitioner's noncompliance with Local Rule of Civil Procedure 56(c) and failure to identify uncontroverted facts

The District of Puerto Rico has long had a local rule requiring a party who moves for summary judgment to submit, in support of his motion, "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). Moreover, "[e]ach fact asserted in the statement shall be supported by a record citation as required by subsection (e) [of Local Rule 56]." *Id.*; see also *Cosme-Rosado v. Serrano-Rodríguez,* 360 F.3d 42, 45 (1st Cir. 2004).[5]

Once a movant complies with this directive—as the Respondents did here—Local Rule 56(c) then obligates the Petitioner, as the opposing party, "to submit with its opposition a separate, short, and concise statement of material facts." Local Rule 56(c). "The opposing statement *shall [also] admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts.*" *Id. (Emphasis added)*; accord *Corrada Betances v. Sea–Land Serv., Inc.,* 248 F.3d 40, 43 (1st Cir. 2001). "Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by th[e] rule." *Id. See also Mariani-Colón v. Department of Homeland Sec. ex rel Chertoff,* 511 F.3d 216, 219 (1st Cir. 2007); *Cabán Hernández v. Philip Morris USA, Inc.,* 486 F.3d 1, 6–7 (1st Cir. 2007).

If the party opposing summary judgment fails to comply with Local Rule 56(c), this rule permits the district court to "deem[] admitted" the moving party's statement of facts unless they are otherwise properly controverted. *Mariani-Colón*, at 219 (quoting *Alsina–Ortiz v. Laboy,* 400 F.3d 77, 80 (1st Cir. 2005)). Local Rule 56(e) further provides that "the court may disregard any statement of fact not supported

---

[5] In *Cosme-Rosado,* 360 F.3d 42, 45, the First Circuit referenced Local Rule of Procedure 311.12, which is the predecessor of Rule 56. Notwithstanding the change in name of the Rule, the requirements of Rule 311.12 and Rule 56 in sum and substance remained the same.

by a specific citation to record material properly considered on summary judgment, and that "*the court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.*" *Id.* (Emphasis added.)

The First Circuit has stated that the purpose of this "anti-ferret rule" is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted. *Mariani-Colón*, at 219 (citing *Cabán Hernández*, 486 F.3d at 7). Otherwise, the parties would improperly shift the burden of organizing the evidence presented in each case to the district court. *Id.* (citing *Cabán Hernández*, 486 F.3d at 8; *see also Alsina–Ortiz*, 400 F.3d at 80. Given Local Rule 56(c)'s important purpose, the First Circuit has repeatedly upheld its enforcement, stating that litigants ignore it "at their peril." *Mariani-Colón* at 219 (citing *Cabán Hernández*, 486 F.3d at 7); *see also Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 4 (1st Cir. 2003).

In this case, the Respondents' Motion for Summary Judgment appropriately contains a separate, short, and concise statement of material facts, setting forth 180 numbered paragraphs as to which they contend there is no genuine issue of material fact. *See* Docket No. 110-1. Moreover, each fact asserted in the statement is duly supported by a specific citation to the record, as required by Local Rule 56(b). Docket 110-1.

Petitioner's Opposition, on the other hand, contains no separate, short, and concise statement of material facts. Nor does it admit, deny, or qualify any of the Respondents' 180 paragraphs of proposed uncontested facts. Indeed, the Petitioner's Opposition makes no reference whatsoever to Respondents' separate, short, and concise statement of uncontested material facts. The Opposition is little more than 19 pages of facts unsupported by references to the record, most of which are copied verbatim from Petitioner's Amended Motion to Vacate Sentence (Docket No. 33), interspersed with sparse legal argument, and a handful of isolated citations to the record that fail to categorically identify material facts in controversy or address their substantive relevance to the argument for relief.

_____

The First Circuit has held that submitting an "alternate statement of facts," rather than admitting, denying, or qualifying a defendant's assertions of fact "paragraph by paragraph as required by Local Rule 56(c)," justifies the issuance of a "'deeming' order," which, in effect, deems defendant's assertions of fact as uncontroverted. *Cosme-Rosado*, at 45 (quoting *Ruiz-Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000). In this case, given Petitioner's failure to comply with Local Rule 56(c), the Court deems Respondents' 180-paragraph statement of facts uncontested and uncontroverted and finds that there are no relevant material factual matters subject to controversy. Accordingly, the Court finds this case ripe for summary judgment and will evaluate all legal arguments based on the uncontested factual scenario as set forth in Respondents' 180-paragraph statement of facts and its own independent review of the record as further detailed below.[6]

    A. <u>Uncontroverted Facts Relevant to Petitioner's Amended Motion to Vacate Sentence.</u>

In his Amended Motion to Vacate Sentence, Petitioner claims that his trial attorneys incurred in seven distinct instances of ineffective assistance that support his claim from relief by failing to: **(1)** to diligently investigate potentially exculpatory evidence (Docket No. 31 at 6); **(2)** to interview Agent Colón who had conducted the state's investigation (*Id.*); **(3)** to investigate the medical record of the physical examination of the minor victim conducted weeks after the alleged assault (*Id.*); **(4)** to make arrangements for the defense expert to perform an actual evaluation of the minor (Docket No. 31 at 6-7); **(5)** to adequately investigate prior contradictory statements regarding the facts of the case by the witnesses to be presented at trial which could have been used to effectively impeach those witnesses (Docket No. 31 at 7); **(6)** to object to inadmissible testimony designed to improperly repeat and bolster the child's alleged out of court statements as well as improper questions by the defense [sic] (*Id.*); and **(7)** to effectively object to the admission of information relating

_____

[6] For example, the Court relies significantly on what transpired during the bench trial based on the Puerto Rico Court of Appeals' well-drafted opinion found at Docket No. 117-8 of the record.

to the supposed prior abuse by the Petitioner. *Id.* He also raises additional individual claims of ineffective assistance of counsel for the first time in his Opposition. The uncontroverted facts relevant to Petitioner's claims of error and the case in general are as follows.

### 1. Overview of the charges, the verdict, and the sentence.

On April 11, 2013,[7] the Petitioner was indicted and charged with sexual assault against a minor, in violation of Article 142 of the 2004 Puerto Rico Criminal Code,[8] for having unlawfully, voluntarily, maliciously, and criminally carried out a digital penetration of his then six-year-old biological daughter approximately one year earlier, on January 5, 2012. Docket No. 117-10 at 1; SUMF ¶¶ 1 & 2). A bench trial before the Honorable Hiram Cerezo de Jesús was held over the span of five days, on October 23, 25, 28 and 31, and November 1, 2013. SUMF ¶¶ 3 & 6. Judge Cerezo de Jesús found the Petitioner guilty as charged, and on January 23, 2014, sentenced him to 20 years of imprisonment. SUMF ¶¶ 4 & 5.

### 2. Petitioner's process of choosing and hiring his legal counsel

The Petitioner is originally from the town of Moca, Puerto Rico. Docket No. 110-2 at p.12, lines 15-18. So, when he was first accused of inappropriately touching his daughter, by none other than his own mother (docket no. 110-2 at p.17, lines 10-11), he consulted an attorney in his hometown. That attorney could not take

---

[7] The Petitioner's Opposition instead refers to a charging date of February 13, 2013, which is the date when the Petitioner was apparently charged by way of a criminal complaint or "denuncia" in Spanish. Reference to that date can be found in Petitioner's Opposition at 5 and at Docket No. 110-2 p.9, line 22.

[8] Article 142 of the Criminal Code of Puerto Rico 2004, which was the applicable Criminal Code at the time, provides as follows:

> **Sexual Assault:** Any person who performs sexual penetration, whether vaginal, anal, orogenital, digital or instrumental, under any of the circumstances set forth below shall be guilty of a felony of the second degree:
>
> > (a) If the victim at the time of the act has not reached sixteen (16) years of age.

the case,[9] so the Petitioner was referred to Attorneys Rolando Matos Acevedo and Leonardo Muniz Gómez, who are also from Moca. SUMF ¶ 37. *See also* Docket No. 110-2 at p.12, line 25 – pp.1-5.

The Petitioner met with Attorneys Matos Acevedo and Muñiz Gómez in the hopes of having them represent him with respect to 1) a protective order that his mother had requested seeking to prevent him from having any contact with his daughter (this was well before any criminal charges were filed against the Petitioner) (docket no. 110-2 at p.18, lines 20-23), and 2) a custody matter involving his daughter. Docket No. 110-2 at p.14, lines 1-12; SUMF ¶¶ 8 & 9. Attorney Matos Acevedo was primarily in charge of the custody matter, while Attorney Muñiz Gómez was primarily in charge of the protective order case and any subsequent criminal matter that might arise from it. SUMF ¶¶ 10 & 11.

After consulting with Attorneys Matos Acevedo and Muñiz Gómez, the Petitioner returned to New York for the duration of the protective order, but he stayed in contact with them by phone "once or twice a month" (docket no. 110-2 at p.26, lines 1-10), even though he had not yet signed an official contract with them to represent him in either matter. SUMF ¶¶ 16-20.

### 3.   *The Petitioner's attorneys' professional experience*

Attorneys Matos Acevedo and Muñiz Gómez opened their office in or about the year 2008 and they worked under the corporate name of "Bufete Matos & Muñiz." Docket No. 110-7 at 2. Prior to crossing paths with the Petitioner, Attorneys Matos Acevedo and Muñiz Gómez had been partners for approximately 11-12 years. SUMF ¶¶ 132 & 133. Before they met the Petitioner, Attorneys Matos Acevedo and Muñiz Gómez had each handled approximately 100 criminal cases involving both misdemeanors and felonies, including assaults, mutilations, domestic violence (Law 54), and firearms offenses. SUMF ¶¶ 134 & 135.  Attorney Muniz Gómez had handled

---

[9] The record is unclear, nor is it relevant to the case, why that first attorney did not accept Petitioner's case.

sexual assault cases in the civil arena, but this was the first time he handled a sexual assault charge in the criminal arena. SUMF ¶ 136.

### 4. *The pretrial criminal proceedings*

At some point in early 2013, the Petitioner was informed by his attorneys that charges were going to be filed against him by the District Attorney in Aguadilla, Puerto Rico, and that there was also a hearing scheduled in the custody matter for January 14, 2013. They therefore informed him that he had to return to Puerto Rico immediately. Docket No 110-2 at p.27-28; SUMF ¶ 22.

On February 13, 2013, the Court held a hearing[10] at which Agent Mónica Ubiñas Torres testified as to charges of sexual assault and was cross-examined by Attorney Muñiz Gómez. SUMF ¶¶ 27, 29 and 30. After hearing from the agent, the Court found probable cause to charge the Petitioner with sexual assault of a minor. SUMF ¶¶ 23-31. Attorney Muñiz Gómez represented the Petitioner at the bail hearing and successfully persuaded the Court to release him under house arrest with an electronic monitoring device. SUMF ¶¶ 33-35. Attorney Muñiz Gómez also helped Petitioner contact a bail bondsman to post the necessary bail. SUMF ¶ 32.

It was at this point that the Petitioner finally signed a contract for Attorneys Matos Acevedo and Muñiz Gómez to represent him in the criminal matter. SUMF ¶ 39. Because the Petitioner was under house arrest, Attorneys Matos Acevedo and Muñiz Gómez had to travel to the Petitioner's house, which was not that far from their office, to meet with him to prepare strategy for his defense. SUMF ¶¶ 36-39.

### 5. *Rejection of the plea offer*

Early in the case, the Aguadilla District Attorney made an offer for the Petitioner to plead guilty to the lesser included offense of lewd acts if he agreed to waive his right to a preliminary hearing, which the Petitioner did not accept. SUMF ¶

---

[10] The Court understands from the record that this initial hearing was a hearing known in Puerto Rico as a "Regla 6" hearing (or "Rule 6" hearing in English), which is governed by Rule 6 of the Puerto Rico Rules of Criminal Procedure. During a Rule 6 hearing, the judge makes a probable cause determination sometimes based solely on the testimony of an affirming agent, and if probable cause is found, the Court issues what is known as a "denuncia." This procedure is similar to the procedure used in the federal system for approving criminal complaints.

153. Because of the importance of the case and the potential penalty to which the Petitioner would be exposed if convicted of a second-degree crime, Attorneys Matos Acevedo and Muñiz Gómez insisted on having Petitioner sign a waiver which explained the details of the plea offer and the consequences of not accepting it. SUMF ¶¶ 154-156. Petitioner rejected the plea offer and knowingly and voluntarily exercised his right to go to trial before a judge sitting without a jury. SUMF ¶ 156.

### 6. *The Preliminary Hearing*

A preliminary hearing was then held at which Attorneys Matos Acevedo and Muñiz Gómez both represented the Petitioner. SUMF ¶¶ 61. During the preliminary hearing, the Petitioner's daughter and two other witnesses testified. Attorneys Matos Acevedo and Muñiz Gómez cross-examined each witness during the hearing. SUMF ¶¶ 62-64.

### 7. *Discovery materials and development of case strategy*

During the discovery phase of the proceeding, Attorneys Matos Acevedo and Attorney Muñiz Gómez discussed with the Petitioner every piece of evidence produced by the government. SUMF ¶ 81. They also filed a multitude of motions under Rule 95 Puerto Rico Rules of Criminal Procedure[11] requesting discovery from the government. For example, they filed motions seeking discovery on April 30, 2013, May 24, 2013, June 5, 2013, June 21, 2013, and July 16, 2013, all of which are part of the record before this Court. SUMF ¶¶ 85-89.

Once counsel received the discovery package from the government, they discussed it with the Petitioner, including the results of the expert report prepared by psychiatrist Dr. Raúl López. SUMF ¶¶ 51-56. Petitioner felt frustrated, however, because he expected the government's expert report to definitively indicate whether, or not, his daughter had indeed been penetrated. SUMF ¶¶49-57. The Petitioner therefore requested that his attorneys hire another expert to perform a second physical examination of his daughter. SUMF ¶¶ 41-43. The Petitioner was hoping to

---

[11] Rule 95 of the Puerto Rico Rules of Criminal Procedure is a general rule that permits the defendant to request certain discovery from the government.

find an expert who would certify that his daughter "was a virgin and that she had never been touched." SUMF ¶45.

The attorneys requested leave of the Court "a few times" to allow a second physical examination, but the Court denied each request finding that the procedure would re-victimize the minor without providing additional pertinent evidence to the case. Docket No. 110-11 at p.29, lines 8-17; SUMF ¶ 163. Given the fact that the Court would not allow the Petitioner to perform a second physical examination of his minor daughter, counsel hired the services of Dr. Elsa Beatriz Cardala Sánchez ("Dr. Cardala"), an experienced pediatric psychologist, to review the government's expert report, provide an opinion favorable to the Petitioner, and assist generally with Petitioner's defense at trial. SUMF ¶¶ 58-59; and 104-107.

### 8. *The Bench Trial*

When the time came for trial, both Attorney Matos Acevedo and Attorney Muñiz Gómez explained to the Petitioner that he had a right to a trial before a jury. SUMF ¶ 65. They also explained to him that he had the right to a bench trial before a judge sitting without a jury and they explained to him the pros and cons of each type of trial. SUMF ¶ 64. In the end, the Petitioner opted for a bench trial and signed a "Waiver of Jury Trial" form (SUMF ¶ 70(i))[12] and a separate "Release of Liability." SUMF ¶ 68.[13]

---

[12] By signing the Waiver of Jury Trial form, the Petitioner "affirmed that he was satisfied with his legal representation and has no objection to the way that he has been represented." SUMF ¶ 70(i).

[13] The Release of Liability, signed by the Petitioner, stated as follows:

    a. During a hearing held on March 15, 2013, attorney Leonardo Muñiz Gómez informed the petitioner that the prosecution was offering a deal for him to waive the preliminary hearing with the agreement to negotiate a sentence of probation.

    b. The deal offered by the district attorney read: "Waive the preliminary hearing in order to plead guilty of a reclassified crime of lewd acts and in consequence the district attorney would recommend a sentence of eight (8) years in probation."

    c. The petitioner's attorneys, Leonardo Muñiz Gómez and Rolando Matos Acevedo, informed him of the deal offered by the prosecution. The attorneys also explained the petitioner the legal consequences in the case should he accept the deal, which would put an end to the case.

They also explained that should the petitioner accept the deal offered; it would have the consequence of including him in the sex offenders' registry for at least 25 years.

d. The attorneys were prepared to see the preliminary hearing.

e. The petitioner had the right to a jury trial or a bench trial.

f. The petitioner was explained by both attorneys of the difference between a bench trial and a trial with a jury composed of twelve (12) people.

g. With an understanding of all the before mentioned, as explained by his attorneys, the petitioner, freely and voluntarily, expressed his decision not to accept the deal offered, and to see the preliminary hearing, which they took upon.

h. After the preliminary hearing, and after clarifying all his doubts regarding the process taking place against him, the petitioner requested his attorneys that it was his wish that the criminal proceeding be held at a bench trial.

i. Both attorneys explained the petitioner the scope of the process that the petitioner selected, and that the determination of his case would be at the hands of the judge, who would evaluate all the evidence and would give the credibility that he understands, and he would take the decision based on the credibility of the witnesses and the evidence presented.

j. The petitioner certified that the attorneys evaluated all the evidence and explained to him the scope of it.

k. The petitioner was also explained that, for the crime accused of, should he be found guilty at trial, he would face up to twenty-five (25) years in prison, and would be included in the sex offender registry for the term established by law.

l. After been explained all before mentioned, the petitioner, freely and voluntarily, decided to reject the offer of the prosecution, go to trial, and abide by the determination of the judge.

m. The petitioner was aware of the legal consequences of going to trial and be found guilty of the crime accused of. Notwithstanding this, he desired to see the case to the last consequences and to not accept any kind of deal.

n. The petitioner was satisfied with the legal representation by the attorneys, and of the responsible way that they have attended to the case.

o. The petitioner's brother, Wilfredo Ramirez Lorenzo, signing as a witness, was aware that attorneys Leonardo Muñiz Gómez and Rolando Matos Acevedo, explained them both all the above-mentioned details, and that they represented the petitioners adequately.

Docket No. 117-1.

_____

At trial before Judge Cerezo de Jesús, the prosecution presented the Petitioner's minor daughter, A.L.R.M., as its first witness Docket No. 117-8 at p.1. After her, they called the following additional fact witnesses: Ms. Delia Lorenzo Hernández (grandmother of the child and Petitioner's mother); Ms. Wanda Rodríguez Lorenzo (aunt of the child and Petitioner's sister); Ms. Ileana Nieves Soto (social worker of the school where the child attended); and Officer Mónica Ubiñas Torres (from the Sexual Crimes and Child Abuse Division of the Puerto Rico Police Bureau). *Id.* The prosecution then called the following expert witnesses: Dr. Linda Rose Laras García (forensic gynecologist) and Dr. Raúl López (forensic psychologist). *Id.*

In Petitioner's defense, Attorneys Matos Acevedo and Muñiz Gómez cross examined each witness presented by the government and succeeded in eliciting information favorable to the Petitioner from every witness. *Id.* at 1-9. For example, on cross examination of Officer Ubiñas, she indicated that she was assigned the case in November or December of 2012 and was given the file compiled by Officer Brenda Colón. *Id.* at 5. That file contained the interview sheets conducted with the child, Doña Delia, Aunt Wanda, and Ms. Nieves. *Id.* Officer Ubiñas stated that, by the time she was assigned the case, the investigation was already focused on the Petitioner. *Id.*

During Officer Ubiñas' testimony, a document in the police file that identified the body parts was admitted into evidence (Defense Exhibit 1). *Id.* This document is usually given to the victims, so that they themselves mark the parts of the body that were allegedly touched. *Id.* The child placed an "X" on six areas of the body drawn on the document. *Id.* The corner of the document contained a handwritten note that read "X" equals "toti."[14] *Id.* On redirect, Officer Ubiñas specified that the child drew the X's in the area of the arms, legs, navel and vagina of the drawing. *Id.* Officer Ubiñas stated that she did not know why the marks were placed in those places nor what they referred to. *Id.*

_____

[14] "Toti" is the diminutive word often used by children to refer to the vagina.

After the prosecution rested, the defense presented its own case. Attorneys Matos Acevedo and Muñiz Gómez called the following witnesses to testify: Ms. Rosa María Lorenzo Rodríguez (Petitioner's cousin) and expert witness Elsa Beatriz Cardala Sánchez (pediatric psychologist). *Id.* at 9.

Dr. Cardala's testimony was critical to the defense case. She testified that, among other things, one of the prosecution's principal experts, Dr. López, either did not assess the minor victim well, or that the sexual abuse simply did not occur. *Id.* at 9-10. She also took exception with the fact that the child had been examined on six separate occasions. *Id.* She indicated that the scientific literature provides that it is inappropriate to expose a child to multiple evaluations, with different professionals, at such different times, because the questions could be suggestive to the child. *Id.* She also testified that she did not directly evaluate the child, but that, to generate a professional opinion on a documentary analysis, it is not a requirement to directly evaluate the child. *Id.* Thus, to conduct her analysis, she used her own sexual abuse indicator template and compared it to Dr. López's study. *Id.* Dr. Cardala's hypothesis was that the minor suffered from a false memory, which are memories constructed by a third person. *Id.* In the end, the Court found the Petitioner guilty based largely on the testimony of the Petitioner's minor daughter. *Id. at 15.*

### 9. Applicable post-trial proceedings

After the Petitioner was sentenced on January 23, 2014, Attorneys Matos Acevedo and Muñiz Gómez filed a Motion for Reconsideration, which was denied by the Court. SUMF ¶¶ 176-177. A couple days later, the Petitioner requested the return of his case file so that he could hire a new attorney to handle his appeal. SUMF ¶¶ 179. He then signed a release (the "Release") indicating that he was "satisfied with the legal representation provided to date by Atty. Leonardo Muñiz Gómez and Atty. Rolando J. Matos Acevedo (Matos & Muñiz Law Firm); and the responsible manner in which they handled his case and have procured his best welfare." 118-1 at 2, ¶12. The Release mentioned that Attorney Antonio Sagardia was going to take over Petitioner's representation and file an appeal (*id*. at ¶ 8), and that

"by requesting the resignation of the [sic] Atty. Muñiz Gómez and Atty. Matos Acevedo (Matos & Muñiz Law Firm); they [were] no longer under any obligation to take any new action on [Petitioner's] behalf." *Id*. at ¶ 10.  In paragraph 13 of the Release, the Petitioner also "stat[ed] for the record that as of the signing of this document[,] [he is] relieving Atty. Leonardo Muñiz Gómez, and Atty. Rolando J. Matos Acevedo (Matos & Muñiz Law Firm), of all professional, civil and ethical responsibility in [his] case." *Id*.

10. *Miscellaneous points regarding Petitioner's legal representation.*

According to the uncontested facts, Attorneys Matos Acevedo and Muñiz Gómez spent more than 100 hours working on the Petitioner's case. SUMF ¶¶ 149-151. Indeed, when preparing for and attending trial, they were forced to close their office for two weeks. *Id*. Throughout their representation of the Petitioner, Attorneys Matos Acevedo and Muñiz Gómez attended more than 10 hearings before the court. SUMF ¶ 152.

**III.       28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus.**

The standard of review for habeas corpus petitions is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Under this standard, a federal court may only grant the writ if the underlying state court adjudication resulted in a decision that either "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Brown v. Ruane*, 630 F.3d 62, 66-67 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A. Proceedings contrary to established Federal law

A state court decision is "contrary to" clearly established Supreme Court precedent when "it applies a rule that contradicts the governing law set forth in the Court's cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a different result." *Price v.*

*Vincent*, 538 U.S. 634, 634-35 (2003). A state court unreasonably applies clearly established Supreme Court precedent "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular case." *White v. Woodall*, 572 U.S. 415, 134 S. Ct. 1697, 1706 (2014). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("an unreasonable application of federal law is different from an incoherent application of federal law."). Thus, to prevail on a petition for habeas under 28 U.S.C. § 2254(d)(1), the petitioner must demonstrate that "the court's ruling on the claim being presented in federal court was so lacking in justification that there was *an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement*." *Harrington*, 562 U.S. at 103 (emphasis added).

B. <u>Error must result in actual prejudice</u>

In addition, a petitioner is not entitled to habeas relief because of a non-structural constitutional error, unless he "can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003)). "Overturning final and presumptively correct convictions on collateral review because the State cannot prove that an error is harmless under the Supreme Court's standard in *Chapman v. California* 386 U.S. 18 (1967),[15]

---

[15] In *Chapman*, 386 U.S. 18 (1967) the Supreme Court considered whether the prosecution's reference to the defendants' failure to testify at trial, in violation of the Fifth Amendment privilege against self-incrimination, required reversal of their convictions. The Court rejected the argument that the Constitution requires a blanket rule of automatic reversal in the case of constitutional error and concluded instead that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless." *Id.* at 22. After examining existing harmless-error rules, including the federal rule (28 U.S.C. § 2111), the Court held that "before a federal constitutional error can be held harmless, the

undermines the States' interest in finality and infringes upon their sovereignty over criminal matters. Retrying defendants whose convictions are set aside also imposes significant 'social costs,' including the expenditure of additional time and resources for all the parties involved, the 'erosion of memory' and 'dispersion of witnesses' that accompany the passage of time and make obtaining convictions on retrial more difficult, and the frustration of 'society's interest in the prompt administration of justice.' *United States v. Mechanik*, 475 U.S. 66, 72 (1986) (internal quotations marks omitted)." *Brecht*, 507 U.S. at 637. Moreover, granting habeas relief merely because there is a 'reasonable possibility' that trial error contributed to the verdict, (*see id.*) (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86 (1963)), is at odds with the historic meaning of habeas corpus–to afford relief to those whom society has 'grievously wronged.'

### C.  Review is limited to the record

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers in the past tense to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181-182 (2011). This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. *Id.* at 182 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "The federal habeas scheme leaves primary responsibility with the state courts . . . ." *Id.* (quoting *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002)).

That is why Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for habeas relief. It would be contrary to that purpose to

---

court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S., at 24. The State bears the burden of proving that an error passes muster under this standard.

allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*. *Id.*

## IV.     Respondent's exhaustion of state remedies and timeliness arguments must be summarily denied based on the doctrine of the Law of the Case

Before delving into the substantive factual and legal issues related to Petitioner's claim of ineffective assistance of counsel, the Court is obliged to discuss, and discard, the Respondents' first two arguments in support of their claims for relief by summary judgment. The first claim is that the Petitioner failed to exhaust his state remedies before seeking habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) through his Amended Motion to Vacate Sentence. The second claim is that Petitioner did not *timely* file his Amended Motion to Vacate Sentence. The Court notes, and the Respondents so admit in footnote 30 of their Motion for Summary Judgment, that the Court has already twice ruled on the timeliness issue. Indeed, the Court has already ruled against the Respondents as to both the timeliness issue and the exhaustion of state remedies issue. *See* Docket Nos. 59 and 77.

In Docket No. 59, with respect to the exhaustion of state remedies issue, the Court stated the following:

> This Court has previously found that a petitioner who presents his ineffective assistance of counsel claim through a Rule 192.1 motion does not run afoul of the independent state grounds doctrine and is able to exhaust remedies by taking it all the way to the TSPR.[16] Therefore, applying all aforementioned standards to the instant case, ***the Court finds that Petitioner acted diligently in raising his ineffective assistance of counsel claim during his***

---

[16] "TSPR" is an abbreviation which stands for the "Tribunal Supremo de Puerto Rico," or the "Puerto Rico Supreme Court" in English.

---

> ***Rule 192.1 before the trial judge, the TA,***[17] ***and the
> TSPR***, ***thus exhausting the available state remedies***.

Docket No. 59 at 10. (Emphasis and footnotes added.) (Citations omitted.)

With respect to the timeliness issue, the Court also stated the following:

> The original habeas petition and the order staying the case
> were entered within the one (1) year statute of limitations
> period, ***thus rendering the action timely***. Furthermore,
> the amended petition was also filed within one (1) year of
> having exhausted state remedies as to the Rule 192.1
> proceedings. ***For the aforementioned reasons,
> Petitioner's habeas motion is timely***.

Docket No. 59 at 11. (Emphasis added.)

Given the Court's admonition in Docket Entry Order No. 77, that "it will not
entertain any further motions relating to timeliness," the Court is perplexed to see
these issues raised for what amounts to a third time. The Court, however, will not
delve further into matters previously resolved. Moreover, given the specificity and
clarity with which each ruling was handed down, the Court finds both issues to be
covered by the well-established doctrine of the "law of the case." The law of the case
doctrine requires that legal decisions, or rulings of law, made by a court at a
particular stage of a civil or criminal proceeding become the law of the case, and that
thereafter these determinations govern the same issues in subsequent stages of the
same litigation, unless corrected by appellate review. *McConaghy v. Sequa Corp.* 294
F. Supp. 2d 151, 160 (D.R.I. 2003) (citing *Arizona v. California,* 460 U.S. 605, 618
(1983) and *Ellis v. United States,* 313 F.3d 636, 646 (1st Cir. 2002)). As the First
Circuit has observed, the law of the case doctrine "means that a court ordinarily ought
to respect and follow its own rulings, made earlier in the same case." *McConaghy* at
160 (citing *Ellis,* 313 F.3d at 646). This concept applies to all legal determinations
made at the same level of proceedings, regardless of whether the rulings were made
by a predecessor judge. *See id.* ("The orderly functioning of the judicial process

---

[17] "TA" is an abbreviation which stands for the Puerto Rico "Tribunal de Apelaciones" or the
Puerto Rico "Court of Appeals" in English.

requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special circumstances.").

Respondents fail to demonstrate or even argue that there are any special circumstances that would justify revisiting either of the Court's prior decisions regarding timeliness. Respondents present no new facts nor any amendments to the applicable case law that would warrant a reconsideration of matters that have been duly adjudicated for more than two and a half years. Enough said regarding these recycled issues.

**V.       Petitioner's claims of ineffective assistance of counsel**

Petitioner's claim for habeas corpus relief under § 2254(d)(1) is based on the allegation that his attorneys provided ineffective assistance of counsel by incurring in fourteen (14) distinct errors of representation that were so egregious as to result in proceedings contrary to the constitutional standards for a fair trial set forth on the Sixth Amendment.

> A.   The standard of review for ineffective assistance of
>      counsel claims.

In a long line of cases that includes *Powell v. Alabama*, 287 U.S. 45 (1932), *Johnson v. Zerbst*, 304 U.S. 458 (1938), and *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Supreme Court has recognized that the Sixth Amendment right to counsel exists, and is needed, to protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause, which provides that:

> "In all criminal prosecutions, the accused shall enjoy the
> right to a speedy and public trial, by an impartial jury of
> the State and district wherein the crime shall have been
> committed, which district shall have been previously
> ascertained by law, and to be informed of the nature and
> cause of the accusation; to be confronted with the witnesses
> against him; to have compulsory process for obtaining

> witnesses in his favor, and to have the Assistance of
> Counsel for his defence."

*Id.*, 466 U.S. at 685.

Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. *Id.* The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants "ample opportunity to meet the case of the prosecution" to which they are entitled. *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 276 (1942)).

### 1. *Right to effective assistance of counsel*

Because of the vital importance of counsel's assistance, the Supreme Court has held that, with certain exceptions, a person accused of a federal or state crime has the right to have counsel appointed if retained counsel cannot be obtained. *Id. See Argersinger v. Hamlin*, 407 U.S. 25 (1972). That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. *Id.* The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results. *Id.* An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. *Id.* at 685-686.

For that reason, the Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). Counsel can deprive a defendant of a right to effective assistance, simply by failing to render "adequate legal assistance." *Id.* (*quoting Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* The court must then determine whether, considering all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work. *Id.*

### 2. *Deficient and prejudicial representation*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* at 687. *Second*, the defendant must show that the deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* For that reason, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. Addressing the prejudice prong prior to evaluating counsel's conduct is a permissible approach and even endorsed where more efficient. *González–Soberal v. United States*, 244 F.3d 273, 277–78 (1st Cir. 2001).

To successfully prove that counsel's performance was so deficient as to offend the Sixth Amendment, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. And, to successfully prove prejudice, a petitioner may not simply show that counsel's errors had "some conceivable effect on the outcome," but rather that counsel's deficient conduct "more likely than not altered the outcome in the case." *Id.* at 693. In other words, a petitioner must show that, but for counsel's deficient performance, there is a *reasonable probability* of a different outcome, meaning "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### 3. *Deference to professional judgment and trial strategy choices*

The purpose of the right to effective assistance of counsel of the Sixth Amendment is to ensure that criminal defendants receive a fair trial. *Id.* However, judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Id.* at 689 (citing *Engle v. Isaac*, 456 U.S. 107, 133-134 (1982)).

The court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364-365 (1981)). The court must respect counsel's strategic choices, recognizing that "[t]he law does not require counsel to raise every available nonfrivolous defense." *See Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009).

Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' *Strickland,* 466 U.S. at 689. (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *Id.* at 689-90 (citing Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L.Rev. 299, 343 (1983)).

### 4. Evaluation must address counsel's conduct without benefit of hindsight

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of the challenged conduct based on the facts of the case viewed as of the time of counsel's determination, not in hindsight. *Id.* at 690.

### VI. Petitioner failed to allege specific instances of ineffective assistance of counsel that violate clearly established constitutional standards

#### A. Inexperience in handling cases with the specific crime charged by trial attorneys with over a decade of criminal trial experience does not amount to ineffective assistance of counsel.

Petitioner claimed that his attorneys were not competent to handle his defense because this proceeding was their first encounter with a charge of criminal sexual abuse of a minor. This argument is a non-starter. The uncontested record demonstrates that Attorneys Matos Acevedo and Muñiz Gómez both had more than 11-12 years of experience defending criminal defendants in the courts of Puerto Rico before they met the Petitioner. SUMF ¶¶ 132 & 133. Indeed, prior to being hired to represent the Petitioner, each attorney had handled approximately 100 criminal

cases involving both misdemeanors and felonies, including assaults, mutilations, domestic violence (Law 54), and firearms offenses. SUMF ¶¶ 134 and 135.  Attorney Muñiz Gómez had also handled sexual assault cases in the civil arena. SUMF ¶ 136. Accordingly, Petitioner's bald allegation that his attorneys lacked the experience to handle a criminal proceeding of this type is without merit.

"To assume constitutional proportions, 'a lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.' *Allen v. VanCantfort*, 316 F. Supp. 222, 229 (D. Maine 1970) (quoting (*United States ex rel. Boucher v. Reincke*, 341 F.2d 977, 982 (2d Cir. 1965)). (Further citations omitted). 'Mere improvident strategy, bad tactics, mistake[s], carelessness or *inexperience* do not necessarily amount to ineffective assistance of counsel, unless taken as a whole the trial was a 'mockery of justice." *Edwards v. United States*, 103 U.S.App.D.C. 152, 256 F.2d 707, 708 (Burger, J.), *cert. denied*, 358 U.S. 847 (1958). (Emphasis added.) Indeed, it is well settled that "[a]n attorney can render effective assistance of counsel even if he has had no prior experience in criminal advocacy." *United States v. Lewis*, 786 F.2d 1278 (5th Cir. 1986) (citing *United States v. Kelley*, 559 F.2d 399, 401 (5th Cir.), cert. denied, 434 U.S. 1000 (1977)). "Whether the defendant has been afforded his right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work." *Lewis*, at 1281-82.

Moreover, Petitioner does not identify a single fact or instance that demonstrates how his attorney's alleged inexperience with the individual count charged impaired the quality of their representation. To the contrary, the record shows that his attorneys diligently tackled Petitioner's defense from the inception of the proceedings, successfully participating in the Rule 6 and bail hearing and effectively procuring a favorable plea offer before the preliminary hearing, which the Petitioner rejected. *See* SUMF ¶¶ 32, 33-35, and 153. They also aggressively prosecuted his defense, filing a multitude of pretrial motions regarding discovery and

exculpatory evidence, and seeking authorization from the judge for an additional physical examination of the child victim. SUMF ¶¶ 85-89 and 163. Furthermore, during the bench trial they effectively cross-examined all witnesses for the government and presented expert testimony in support of the developed defense strategy.

The Court finds, therefore, that in this case the Petitioner was represented by two attorneys, each of whom benefited from more than a decade of experience representing criminal defendants in the courts of Puerto Rico, who diligently pursued his defense. They had each handled approximately 100 criminal cases before assuming Petitioner's defense and had delivered professional defense services relating to a variety of criminal violations, including violent crimes like the one charged in this case. The representation they provided to the Petitioner in this case was consistent with or exceeded prevailing professional norms. His attorneys were not ineffective due to their alleged inexperience with the individual crime charged, nor was the Petitioner prejudiced by their level of experience. This claim of ineffective assistance of counsel fails under both prongs of the *Strickland* test.

### B. Petitioner failed to demonstrate that his attorneys' alleged failure to investigate a material fact that would have rendered a different result.

Petitioner claims that his attorneys rendered constitutionally deficient representation because they failed to adequately investigate the case through conclusory and unsupported allegations in both the Amended Motion to Vacate Sentence (see claim (1) at docket 31 at p.6) and in his Opposition. However, as the Petitioner acknowledged in the Opposition, "a petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing both what the investigation would have shown[,] and that the outcome would have been different as a result." *See* Docket No. 122 at 16 (citing *Díaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696)). Notwithstanding that, however, Petitioner fails to identify a material fact that his attorneys allegedly failed to investigate or how such failure to investigate affected the outcome of the trial.

The case law is clear that at the summary judgment stage of the proceedings, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 12 (1st Cir. 1994)). Accordingly, the Court finds that the Petitioner failed to demonstrate that his attorneys were ineffective by failing to investigate a material fact. He is not entitled to habeas corpus relief on this account under *Strickland*.

C.  <u>Petitioner's claim of ineffective assistance of counsel because his attorneys lacked a clear defense strategy is without merit.</u>

The Petitioner claims that his attorneys had no defense strategy. The uncontested facts belie that contention. Paragraph 139 of the Statement of Uncontested Material Facts identifies counsels' trial strategy as being manipulation by the minor's family members who convinced her to testify falsely. SUMF ¶ 139. In addition, the Petitioner's insistence on maintaining his innocence necessarily means that the defense also pursued the strategy of raising reasonable doubt as to whether the sexual penetration ever occurred. Counsel even presented an expert witness, Dr. Cardala, to testify at trial in support of this defense strategy. During the trial, Dr. Cardala provided expert opinion to the effect that "the child's story was [the] product of [a] fantasy created by suggestive questions from her relatives." Docket No. 117-8 at 10.

As explained above, courts have consistently refused to reassess the judgment of defense counsel on questions of strategy, trial tactics or trial decisions in hindsight. *Allen v. Cantforth*, 316 F. Supp. at 229-230. *See, e.g., Bruce v. United States*, 126 U.S.App.D.C. 336, 379 F.2d 113, 116-118 (1967); *Frand v. United States*, 301 F.2d 102, 103 (10th Cir. 1962); *Alexander v. United States*, 290 F.2d 252, 254 (5th Cir.), cert. denied, 368 U.S. 891 (1961). It would be unreasonable to second-guess counsel's professional judgment after conviction merely because a reasonable argument has proven unsuccessful. *Strickland*, 446 U.S. at 689 (citing *Engle v. Isaac*, 456 U.S. 107, 133-134 (1982)). The Court finds, while respecting counsel's strategic decisions, that

the choice to pursue the defense strategy used at trial was consistent with reasonable professional standards. In implementing that professional choice, Petitioner's attorneys met their constitutional obligation to make sure that the adversarial testing process worked in their client's proceeding.

Petitioner fails in proving his contention that his attorneys had no strategy. Nor does he even attempt to argue how he was prejudiced by purportedly having no strategy. Accordingly, his claim of ineffective assistance of counsel because his attorneys had no strategy fails under both prongs of the *Strickland* test.

D.  <u>Petitioner's attorneys diligently pursued a request for an additional examination of the minor victim.</u>

Petitioner claims that his attorneys provided ineffective assistance of counsel because they failed to procure an additional physical examination of the minor child. This argument was raised as claim (4) of the Amended Motion to Vacate and also in the Opposition. Once again, the uncontested facts of the case belie Petitioner's contention. The record is clear that not only did his attorneys request leave of the Court "a few times" to allow for an additional physical examination of the minor victim, all of which were denied by the Court, but Petitioner's own expert opined that "it is inappropriate to expose a child to multiple evaluations, with different professionals, at such different times, because the questions could be suggestive to the child." Docket No. 117-8 at 10.

Based on these facts, the Court finds that Petitioner's attorneys were not ineffective in their representation of Petitioner's interests. To the contrary, they faithfully carried out their client's wishes by repeatedly pursuing his request. It was the trial court, in the exercise of its judicial discretion, that denied counsel's requests for another physical examination. The fact that counsel's requests to the trial court where ineffective in securing Petitioner's wishes because the judge opined otherwise is not evidence of ineffective assistance.

Moreover, the Court finds, based on the testimony of Petitioner's expert at trial, that the failure to authorize an additional examination of the minor victim was

not prejudicial to Petitioner's case because an additional examination could have been detrimental to the Petitioner's case because it could have been suggestive in a way that could have hurt his case. The Court, therefore, finds that the failure to have the minor examined an additional time fails under both prongs of the *Strickland* test.

E. <u>The hiring of a duly qualified pediatric psychologist to present expert testimony consistent with the defense theory was not an error resulting in ineffective assistance of counsel.</u>

Petitioner also claims that his attorneys were somehow ineffective by failing to retain a psychiatrist, rather than a psychologist, to act as an expert witness at trial. He fails, however, to show how this determination was professionally deficient or prejudicial to the presentation of his defense.

The record shows that "[a]s soon as attorneys Muñiz [Gómez] and Matos [Acevedo] received the report made by the psychiatrist for the government, they evaluated it and consulted with many professionals until they found one that was in tune with them, so they could hire her." SUMF ¶ 146. They ultimately hired Dr. Cardala, a pediatric psychologist, after diligently interviewing multiple professionals to identify one who could provide a professional opinion on the stand consistent with their theory of defense.[18] Counsel did not act in a deficient manner in interviewing different professionals in search of one who could help their case, nor were they deficient in hiring one that could testify consistent with their defense strategy. As such, Petitioner's claim on this account fails under the first prong of the *Strickland* test.

And though it is not necessary, the Court also finds that hiring Dr. Cardala, a psychologist instead of a psychiatrist, did not prejudice the Petitioner's case. On the contrary, Dr. Cardala was hired precisely because she could provide testimony that was consistent with the overall defense theory that the minor was manipulated by

---

[18] On page 11 of the Opposition, Petitioner also questions the way Dr. Cardala was retained as an expert and raises concerns about the amounts paid in fees for her services. The claims and allegations regarding this issue are not only inartful and unintelligible but fail to identify issues material to the outcome of Petitioner's case. The Court therefore finds this issue irrelevant to the Petitioner's claim for habeas corpus relief and not worthy of further discussion.

her family members. The reliability of that testimony was not dependent on Dr. Cardala's professional degree but on her credentials. Because she was duly qualified by the Court as an expert in her field of practice, the reliability of her testimony was accepted by the trial court, who was also the trier of fact. For that reason, the mere speculation that the trial judge gave Dr. Cardala's testimony less weight because of her profession is insufficient to prove actual prejudice to Petitioner's case.

F.  <u>Failure to seek recusal of the trial judge for an adverse ruling is not ineffective assistance of counsel per se.</u>

Petitioner incidentally raises his attorneys' failure to seek recusal of the trial judge after he denied Petitioner's counsels' request to submit the minor to an additional physical examination as an instance of ineffective assistance of counsel for the first time in his Opposition. He once again, however, provides no factual basis to doubt the judge's impartiality that would support the filing of such a motion with the trial court and evidence a deficiency by his attorneys in failing to pursue such remedy.

Contrary to Petitioner's contention, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . Almost invariably, they are proper grounds for appeal, not for recusal." *In re Boston's Children First*, 244 F.3d 164, 167 n.7 (2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555, (1994). This may be true even when the judicial rulings in question are erroneous. *Id.* (citing *In the Matter of Sheffield*, 465 So.2d 350, 357 (Ala.1984)). Moreover, the First Circuit ha[s] "considered disqualification appropriate only when the charge is supported by a factual basis, and when the facts asserted 'provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality.'" *See In re Boston's Children First*, 244 F.3d 164, 167 (2001). In this case, Petitioner fails to allege that the trial judge acted partially in making his ruling or that there were any other reasons to doubt his judgment. Absent any such allegations, it would have been legally improper for his attorneys to file such a motion or seek such a remedy.

Petitioner's poorly developed claim also fails to meet both prongs of the *Strickland* test. It is not a basis for habeas corpus relief.

### G. Petitioner's failure to properly develop and support the remaining arguments constitutes waiver not warranting relief.

Petitioner failed to develop or discuss the following five claims of ineffective assistance of counsel raised in the Amended Motion to Vacate: **(2)** that counsel failed to interview Agent Colón who had conducted the state's investigation; **(3)** that counsel failed to investigate the medical record of the physical examination conducted weeks after the alleged assault; **(5)** that counsel failed to adequately investigate prior contradictory statements regarding the facts of the case by the witnesses to be presented at trial which could have been used to effectively impeach those witnesses; **(6)** that counsel failed to object to inadmissible testimony designed to improperly repeat and bolster the child's alleged out of court statements as well as improper questions by the defense [sic]; and **(7)** that counsel failed to effectively object to the admission of information relating to the supposed prior abuse by the Petitioner. Docket no. 31 at 6-7. These five arguments are deemed waived based on the well-settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1990) (Citations omitted). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Id.* The First Circuit has reinforced the concept that "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *Id.* (quoting *Rivera–Gómez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988))).

Petitioner also failed to properly develop or discuss the following arguments in his Opposition: First, whether his attorneys provided him all of the discovery. Petitioner fails to cite to any specific piece of discovery that was purportedly withheld;

and second, whether he could have retained another lawyer before trial. Petitioner fails to state why he wanted another attorney or how hiring another attorney would have changed the outcome of his case. These two arguments are also deemed waived because they were averted to only in a perfunctory manner and without any developed argumentation. *See Zannino*, 895 F.2d at 17.

## VII.    CONCLUSION

For the reasons discussed above, the Court **RECOMMENDS** that Respondents' Motion for Summary Judgment (Docket No. 110) be **GRANTED** and that Petitioner's Amended Motion to Vacate Sentence (Docket No. 31) be **DISMISSED**.

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 13th day of February 2023.

MARSHAL D. MORGAN
United States Magistrate Judge